## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**SAMUEL R. NEEL, III,**

     **Petitioner,**

**v.**                                 **Case No.  4:14cv496-RH/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,[1]**

     **Respondent.**
_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On September 29, 2014, Petitioner Samuel R. Neel, III, represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Petitioner also filed a supporting memorandum of law. ECF No. 6.  On April 17, 2015, Respondent filed an answer with exhibits, ECF No. 15, and Petitioner filed a reply with exhibits on June 22, 2015. ECF No. 17.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

---

[1] The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.  Julie L. Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## **Background and Procedural History**

Petitioner was charged by Information on November 4, 2008, in the circuit court of Leon County, Florida, in case number 2008CF3692, with two counts of sexual battery on a child under age 12 by a defendant 18 years of age or older, in violation of section 794.011(2)(a), Florida Statutes.  Ex. C at 8.[2]  The offense in Count I was alleged to have occurred between June 1, 1981, and December 1, 1981.  The offense in Count II was alleged to have occurred between June 1, 1982, and September 15, 1982.  Ex. C. at 8.

Petitioner proceeded to a jury trial on October 29-30, 2009, and was found guilty as charged.  Ex. C at 219-20; Ex. F at 331 (transcript pagination).  Judgment and sentence were entered on October 30, 2009,

---

[2] All citations to the state court record, "Ex. –," refer to exhibits A through FF filed by Respondent in conjunction with the answer.  *See* ECF No. 15, attachments 1 through 5.

and Petitioner was sentenced to two concurrent life sentences.  Ex. C at 221-29.  Petitioner appealed to the state First District Court of Appeal, which affirmed without opinion on July 8, 2011.[3]  Ex. L.  The mandate was issued on August 3, 2011.  Ex. M.  *See* <u>Neel v. State</u>, 65 So. 3d 518 (Fla. 1st DCA 2011) (table).

Petitioner filed his initial motion for post-conviction relief on September 12, 2011, pursuant to Florida Rule of Criminal Procedure 3.850.[4]  Ex. O at 1.  An evidentiary hearing was held February 23, 2012, before the Honorable James C. Hankinson.  Ex. O-1 at 1-66 (transcript pagination).  The trial court denied postconviction relief on that same date, citing the reasons stated on the record of the hearing.  Ex. O at 64; Ex. O-1 at 60-65 (transcript pagination).  Petitioner's appeal to the state First District Court of Appeal was affirmed per curiam without opinion on

---

[3] The issues raised on direct appeal were as follows: (1) the trial court erred in denying the motion to dismiss information on due process grounds; (2) the trial court abused its discretion in permitting the State to introduce similar fact evidence; and (3) the trial court erred in denying the defendant's motion to suppress two recorded telephone conversations.  Ex. I.

[4] The initial Rule 3.850 motion raised the following claim: Trial counsel rendered ineffective assistance by failing to advise Petitioner regarding matters pertinent to a plea and by misadvising Petitioner concerning the amount of gain time for which he would be eligible regarding the State's plea offer of five years in prison followed by five years of probation.  Ex. O at 2.

February 20, 2013.[5]  Ex. T.  The mandate was issued on March 8, 2013.

Ex. U.  *See* <u>Neel v. State</u>, 107 So. 3d 410 (Fla. 1st DCA 2013) (table).

Petitioner filed a petition in the state First District Court of Appeal on

July 31, 2013, alleging ineffective assistance of appellate counsel.[6]  Ex.

EE.  That petition was denied on the merits on August 21, 2013.  Ex. FF.

*See* <u>Neel v. State</u>, 119 So. 3d 538 (Fla. 1st DCA 2013) (mem.) (stating that

"[t]he petition alleging ineffective assistance of counsel is denied on the

merits.").

A second Rule 3.850 motion for post-conviction relief was also filed

on July 31, 2013.[7]  Ex. W at 1-38.  The Rule 3.850 motion was dismissed

by "Order Dismissing Second or Successive Rule 3.850 Postconviction

Motion and Denying Illegal Sentence Claim" on August 16, 2013.  Ex. W at

---

[5] The issue argued on appeal from denial of the initial post-conviction motion was that defense counsel provided ineffective assistance when he failed during the course of pretrial plea negotiations to accurately advise Petitioner regarding the applicable gain time he would be eligible to receive on the sentence offered in the plea.  Ex. Q.

[6] The petition alleged that appellate counsel in the direct appeal was ineffective by failing to raise as fundamental error the trial court's disregard of sections 921.005 and 948.01, Florida Statutes, which allow sentencing discretion.  Ex. EE at 15.  The petition also alleged that appellate counsel should have raised the failure of trial counsel to argue those statutes at sentencing as a matter of ineffective assistance on the face of the record.  Ex. EE at 18.

[7] The successive Rule 3.850 motion alleged that trial counsel rendered ineffective assistance by failing to argue the provisions of sections 921.005 and 948.01, Florida Statutes, to the sentencing judge and by failing to object when the trial judge did not follow the statutes.  The motion also alleged the sentence was illegal because the trial judge failed to consider and apply those statutes.  Ex. W at 1-37.

121-27.  In that same order, the trial court denied that portion of the motion that alleged an illegal sentence, with the trial court finding the claim not cognizable in a motion filed under Florida Rule of Criminal Procedure 3.800(a) and without merit.  Ex. W at 122-23.  Petitioner appealed to the state First District Court of Appeal, Ex. X, which affirmed per curiam without opinion on February 7, 2014.  Ex. Z.  The district court denied the motion for rehearing and for a written opinion, and issued its mandate on April 8, 2014.  Exs. AA, BB, CC.  *See* <u>Neel v. State</u>, 134 So. 3d 456 (Fla. 1st DCA 2014) (table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on September 29, 2014, raising three grounds for relief:

> (1) Trial counsel rendered ineffective assistance in failing to accurately advise Petitioner during plea negotiations regarding the applicable gain time he would be eligible to receive under the plea offered by the State.  ECF No. 1 at 5; ECF No. 6 at 6.

> (2) Petitioner's due process rights were violated when the trial court failed to consider section 921.005, Florida Statutes, and section 948.01, Florida Statutes, when imposing sentence. ECF No. 1 at 7; ECF No. 6 at 24.

> (3) Trial counsel rendered ineffective assistance by failing during sentencing to assert the application of sections 921.005 and 948.01, Florida Statutes, and by failing to object when the sentencing judge failed to consider these statutory provisions; and appellate counsel was ineffective in failing to argue on

direct appeal that the trial court erred in failing to apply sections 921.005 and 948.01, Florida Statutes, during sentencing; and was also ineffective in failing to argue on appeal that trial counsel was ineffective on the face of the record for his failure to alert the trial court to these statutes or to object when the trial court did not consider them during sentencing.  ECF No. 1 at 8; ECF No. 6 at 31.

## **Analysis**

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The Eleventh Circuit has more recently reiterated the guiding principle that federal habeas review is intended to be a " 'guard against extreme malfunctions in the state criminal justice systems,' " and is not intended to be a substitute for ordinary error correction.  Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1238 (11th Cir. 2016) (en banc) (quoting Richter, 562 U.S. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979))).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the

doubt.' " Cullen, 563 U.S. at 181 (quoting Richter, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)). Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365-66 (1995); *see also* O'Sullivan, 526 U.S. at 845; Picard v. Connor, 404 U.S. 270, 277-78 (1971).

The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)). "This rule

of comity reduces friction between the state and federal court systems by
avoiding the 'unseem[liness]' of a federal district court's overturning a state
court conviction without the state courts having had an opportunity to
correct the constitutional violation in the first instance." O'Sullivan, 526
U.S. at 845.

    In order to obtain review where a claim is unexhausted and, thus,
procedurally defaulted, the Petitioner must show cause for the default and
prejudice resulting therefrom or a fundamental miscarriage of justice.
Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate
cause, Petitioner must show that "an external impediment, whether it be
governmental interference or the reasonable unavailability of the factual
basis for the claim . . . prevented petitioner from raising the claim."
McCleskey v. Zant, 499 U.S. 467, 497 (1991) (quoting Murray v. Carrier,
477 U.S. 478, 488 (1986)).  A federal court may grant a habeas petition on
a procedurally defaulted claim without a showing of cause or prejudice if
necessary to correct a fundamental miscarriage of justice.  Henderson v.
Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the
miscarriage of justice exception, the Petitioner must show that "a
constitutional violation has probably resulted in the conviction of one who is
actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut the presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of

counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Knowles, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

### Ground 1: Ineffective Assistance of Trial Counsel Regarding Plea

In this claim, Petitioner contends his trial counsel rendered ineffective assistance by failing to advise him concerning the amount of gain time for which he might be eligible when they discussed plea offers made by the

State, and by failing to advise him of the amount of time he might expect to serve based on gain time available for offenses committed in 1981 and 1982.  ECF No. 1 at 5; ECF No. 6 at 6.  Petitioner asserts that had he known the actual amount of gain time for which he was eligible for his charged offenses, he would have accepted the plea offer of five years in prison followed by five years of probation, and would not have gone to trial. He relies on the decision in Waldrup v. State, 562 So. 2d 687 (Fla. 1990), which he argues would have allowed up to 545 days of gain time per year, depending on certain factors.[8]  Petitioner contends that he did not want to serve more than two and one half to three years in prison due to his wife's health condition at the time.  He argues that had he known of the gain time provisions applicable to any sentence for his convictions, he would have accepted the five year plea offer and possibly been released after serving only two and one half years in prison.  The Respondent contends that the claim is without merit and should be denied.

_____

[8] Waldrup explained that prior to 1983, section 944.275, Florida Statutes, gave the Florida Department of Corrections wider discretion in granting incentive gain time, allowing a gain time award of up to the total number of days in a month for satisfactory and acceptable work.  In addition, up to six days a month could be awarded for work performance over and above that expected.  These gain time awards were in addition to "basic" gain time which a prisoner would receive.  Waldrup, 562 So. 2d at 689. The evidence at the hearing established that Petitioner was earning 26 days of gain time per month at his current correctional facility.  If gain time continued at that rate, Petitioner could have completed a five-year sentence in something less than three years.

The record reveals that prior to trial, the State offered Petitioner a negotiated plea of five years in prison followed by a probationary term of five years.[9]  *See* Ex. P at 1 (State's Ex. A); Ex. O-1 at 32-33.  Petitioner rejected the offer, proceeded to trial, and was convicted as charged and sentenced to life in prison.  Petitioner contends that his trial counsel erroneously informed him that he would have to serve 85 percent of any prison term to which he agreed, and that his counsel had a duty to advise him of the gain time law in effect at the time of his offenses.  Petitioner raised this claim in his initial Rule 3.850 motion and, after an evidentiary hearing, the trial court found that trial counsel was not deficient in his representation of Petitioner as regards the evaluation and discussion of the State's plea offers.  The trial court also found that Petitioner had failed to prove the prejudice prong of Strickland.  Petitioner appealed to the state First District Court of Appeal, which affirmed per curiam without opinion. Ex. T.

---

[9] At the outset of the jury trial, the State put on the record that a plea offer was made for five years in DOC, with ten years of sex offender probation to follow, upon a plea to lewd and lascivious molestation.  Ex. E at 5-6 (transcript pagination).  Petitioner was asked if he was aware of the offer and he responded that he thought the plea offer was for five years in prison and five years probation.  Ex. E at 6.  The prosecutor did not dispute or correct his understanding.  The exact amount of probation is not at issue in this case.

The evidence submitted at the evidentiary hearing held on this claim disclosed that at the time of his prosecution, Petitioner was a practicing attorney with some experience in criminal law.  While on bond prior to trial, he assisted his trial counsel with legal research and discussed legal issues with him during trial preparation.  *See* Ex. O-1 at 11-13, 25 (transcript pagination).  Petitioner testified at the evidentiary hearing that his primary consideration in evaluating plea offers from the State was the amount of time he would actually have to serve.  He said he relied on his trial attorney to advise him regarding the plea offers and that when the State made its best offer of five years in prison and five years probation in exchange for a plea to lewd and lascivious conduct, his counsel told him he would have to serve at least 85 percent of that time.  Ex. O-1 at 13.  Petitioner's wife also testified that she heard trial counsel advise Petitioner he would have to serve 85 percent of any prison term he agreed to in a plea bargain.  Ex. O-1 at 45.  Petitioner and his wife both testified that he rejected that plea offer but indicated to counsel that he would accept a plea offer that required some prison time, up to three years.  Ex. O-1 at 46-50.

Petitioner's trial counsel testified at the evidentiary hearing that he has practiced law for 40 years and had handled thousands of criminal cases.  Ex. O-1 at 30.  He met with Petitioner many times and discussed

trial strategy.  He conveyed all plea offers from the State.  Ex. O-1 at 31.

Counsel identified the letter he wrote to Petitioner dated October 23, 2009,

State's Ex. A, which conveyed the offer of five years in prison and five

years probation.  Ex. O-1 at 32; Ex. P at 1.  The letter also said, "[W]ith that

said, you have previously stated as recently as 22 October 2009 that the

plea offer was not acceptable and instructed me to prepare for trial."  Ex. O-

1 at 32-33 (quoting Exhibit A letter).

When asked if he discussed gain time with Petitioner regarding the

"five and five" offer, counsel said, "No, not that I remember."  Ex. O-1 at 33.

When asked if he recalled advising Petitioner "anything regarding gain

time," Harper stated, "I do not.  And I typically do not go into gain time,

good time with clients."  Ex. O-1 at 33.  He gave the reason for this as

follows:

> **A**  Well, one, you don't know where a client is going to be
> sent to.  It may be in a faith-based institution and there may be
> a lot of programs available and they can gain time faster at one
> institution versus another.  The legalities of that gain time,
> visitation with their children, all those types of issues are
> administrative, mainly with the institution and warden, that we
> just don't get into it.
>     And I say to my clients that I don't try to predict what the
> ultimate number of days is going to be.  You can say 85
> percent, but beyond that, I can't tell you.  And that's pretty much
> the way I say it.
>     . . . .
> **A**  I never promised anything.  I say it this way.  I said
> without a plea bargain, I can't promise you anything but to work

hard and I will work hard.  But if you accept a plea, it's a contract and we can enforce that.  You will know what is on the table.  It cannot get worse.  I can get better, but it won't get worse.

Ex. O-1 at 33-34.  Harper testified that Petitioner rejected the "five and five" plea "unequivocally."  Ex. O-1 at 34.  Harper testified further about the plea discussion with Petitioner:

> **A**  I had a conversation with Mr. Neel about the time of this five and five.  And I know I said something to the effect of what would you take or what would you think would be a reasonable plea.  And he said at most he wanted two years probation.  He wanted [the victim] to apologize to her mother for breaking up the family and for all the torment she caused the family.

Ex. O-1 at 35.  Counsel said Petitioner was "pretty definite" in what he wanted.  Ex. O-1 at 35.  When asked if Petitioner was upset with him for "trying to talk me down off the five years to a lesser prison sentence because he didn't want any prison sentence," counsel answered, "Yes." Ex. O-1 at 36.

Counsel testified that he did not recall discussing gain time with Petitioner as it would relate to a plea offer. He said he was not entirely sure, but "it was against my policy to talk about it specifically because of what I just said.  It changes based on the exact charges.  It changes on the basis of what institution you go to. . . .  It changes on the basis of the

sentence you get." Ex. O-1 at 37-38.  Counsel said if a client asked, he

would discuss it, but with caveats.  Ex. O-1 at 38.

When asked if he was sure Petitioner would not have agreed to any

prison time, trial counsel testified, "His counteroffer to that five years was

two years probation and a written apology."  He did not think Petitioner

would have accepted even a lesser amount of prison time."  Ex. O-1 at 38.

Trial counsel explained,

> The bottom line was two years probation.  Not two years in jail.
> Not two and a half years in jail.  Two years probation.

Ex. O-1 at 40.  The trial judge asked if trial counsel ever made a

recommendation to Petitioner whether to take a plea, and trial counsel

responded:

> I made it very clear, your Honor, that I favored that plea,
> with looking at a life sentence on a sex case where your best
> defense is I had sex with my daughter but she wasn't 12.  She
> was 13.  I just, I never thought that was a good defense.  I
> hated that.  It's incredible to me that a jury would accept it.
> So I definitely was thinking and trying to come up with a
> plea situation that would be palatable to Mr. Neel because I
> thought that was a pretty good deal considering some of the
> cases I have had and some I'm doing.

Ex. O-1 at 41.  He also explained that even though Petitioner made clear

he would not accept a plea with prison, counsel continued to attempt to

obtain a better offer from the State.  Ex. O-1 at 42.

At the conclusion of the evidentiary hearing, the trial court denied

post-conviction relief, stating as follows:

> **THE COURT:** All right. I'm going to deny both the motion pursuant to Rule 3.850 and the motion pursuant to 3.800(c), as has been clarified here it was intended to be filed.[10]  I'm going to state for the record my reasons for that ruling and I'll follow it up with a simple order documenting that.
>
> As both sides are aware, <u>Cottle</u>, Florida supreme court, 733 So. 2d 963, for a motion of this sort to be granted requires the defendant to prove three elements, that the counsel failed to convey or misadvised as to the penalty phase; two, that the defendant would have accepted the plea offer had it been properly conveyed; and, three, that the plea would have resulted in a lesser sentence.
>
> The Fourth DCA has recently ruled on a case involving <u>Cottle</u>.  And it points out the problem with this analysis.  But it is the current law.  I'd cite <u>Hurt v State</u>, 37 Fla. L. Weekly 0227, is a Florida Fourth DCA case, January 25th, 2012, where the Fourth DCA found that it was not ineffective assistance of counsel not to properly advise Mr. Hurt on the appropriate gain time provisions. That was the holding in <u>Hurt</u>.
>
> As to element l, defendant misadvised. The defense has contended there was affirmative misadvice.  I reject that contention.  I do not find that Mr. Neel was affirmatively misadvised. To the extent there was an absence of advice, which is the finding I make, I do not find that to be ineffective assistance of counsel, as found in <u>Hurt</u>.
>
> I would specifically reject the testimony of Mr. Neel and his wife.  I accept Mr. Harper's testimony.  Mr. Harper, although equivocated as to a hundred percent recollection as to any discussion on gain time, was quite clear what he would have

---

10  Florida Rule of Criminal Procedure 3.800(c) provides that a court may reduce or modify a sentence. The motion is generally required to be filed within 60 days after imposition of the sentence or within 60 days after termination of appellate proceedings. The motion is not applicable to minimum mandatory sentences or where the sentencing court lacked discretion.  *See* Fla. R. Crim. P. 3.800(c).

said had the issue come up, simply that it's too unpredictable to try to factor into analysis of whether to accept a plea offer or not.

Frankly, this case proves the point, had he said that Mr. Neel would get 40 days, we'd probably be here claiming now that he was wrong because Mr. Neel's only getting 26 days a month.  Of course, all of that is subject to change depending on conditions in the prison.  So Mr. Harper's legal advice on that topic certainly makes sense.

I also accept his testimony -- reject it.  I would find that the defendant and his wife are certainly under enormous pressure to provide favorable testimony here today.  Obviously, Mr. Neel is facing a life sentence.  As I've indicated, Mr. Harper's testimony makes sense.  It is unpredictable.  There is no doubt that the defendant was given an offer and he unequivocally rejected that offer.

Although, you know, there's no case law, really, of how to factor this in, it is a factor to the Court that the defendant himself is an attorney.  He was not in custody.  He was on bond during preparation for this trial.  It's accepted and undisputed that he was doing significant legal research in this case.  Mr. Neel, although I accept his testimony he didn't handle major criminal law cases, was actively involved in handling criminal cases before and even somewhat after his arrest in this case.

Frankly, it appears to the court, if he was that concerned with the gain time provisions, he could have easily sought his own answer to those questions.

I also find that the defense has failed to prove element 2, that he would have accepted the plea offer made by the State of, what's of record is five years prison, ten years probation, is what's made of record in the transcript.  There's been some confusion whether it was five years and five years or five years and ten years.  But, anyway, it's not proven that Mr. Neel would have accepted that plea offer.  He unequivocally rejected the plea offer.  He was angry about a counteroffer being made by Mr. Harper.  Mr. Harper said he continued to try to resolve the case because he'd felt that the defendant was making a mistake in going to trial, that he recommended that he accept

the plea offer made by the State.  Certainly, given the lengthy prison sentence involved, I do accept Mr. Harper's testimony that Mr. Neel indicated he was not going to accept any prison time.

Again, this is a situation where an attorney recommended that the defendant accept the plea and his advice was rejected by his client.  It's not a situation where an attorney had talked the defendant into going to trial or a situation where the attorney had talked him into pleading to something that he later regretted.  Mr. Neel chose to ignore his attorney's advice and now has suffered those consequences.

Mr. Harper continued to work towards a better deal but to no avail.  The State did not come off their original plea offer, which Mr. Neel had firmly rejected.  I do not accept that it has been proven that had Mr. Neel understood what he understands now about gain time, that he would have accepted the plea.

I would point out just one legal quirk in that.  If Mr. Neel had correctly understood the current law, the 85 percent law that he now says does not apply, he would have understood he was not facing a 25-year mandatory minimum.  He was facing life, which meant life.  The 85 percent and the absolute life go together, which apparently he still is confused about that.

So the motion is denied. Mr. Neel, you have 30 days to file a notice of appeal.  If you can't afford a lawyer, I would consider appointment of a lawyer, but you're not entitled to a lawyer as a matter of right.

Mr. Murray, I would ask that you discuss with Mr. Neel his appellate rights.  If he desires to file an appeal, that you file the appropriate paperwork, the notice of appeal and perfect the record.  Then advise the court whether you wish to continue to represent Mr. Neel or not.  Does that leave anything outstanding?

Ex. O-1 at 60-65 (transcript pagination).

Respondent contends that this case should be decided on the question of whether Petitioner carried his burden under the prejudice prong of <u>Strickland</u>.[11]  The trial court found that the evidence did not establish Petitioner would have accepted the plea offer of five years in prison followed by five years probation.  Ex. O-1 at 63.  The court found that Petitioner unequivocally rejected that plea offer and the credible evidence proved that Petitioner would not accept any prison time.  Ex. O-1 at 63-64.  Evidence presented at the hearing and found credible by the judge supported that conclusion because trial counsel testified that Petitioner was very definite that he would not accept a plea offer that required prison and that he would only accept a probationary term along with a letter of apology to the family.  Ex. O-1 at 35-38.

Before deciding this case solely based on the prejudice prong of Strickland, it will be helpful to determine if Petitioner even met the deficiency prong of the test for ineffective assistance of counsel.  The trial court found that trial counsel did not misadvise Petitioner about the possible gain time to be credited—believing trial counsel when he testified

---

[11] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Strickland</u>, 466 U.S. at 697.

that he would not have told Petitioner that he must serve 85 percent of any prison sentence he accepted.  Trial counsel testified that his policy and practice was not to advise clients about the amount of gain time they might accrue because the factors determining gain time are so variable.  The question remains whether trial counsel was deficient in failing to give Petitioner any advice about the effect of gain time on a sentence that he might accept as part of a plea offer.[12]

Under Florida law, defense counsel is not required to advise a defendant of all possible reductions in prison time to which he may be entitled or to provide a specifically quantified amount of time he is expected to serve in prison.  *See* Cariveau v. Sec'y, Dep't of Corr., 2016 WL 6600955, at *6 (M.D. Fla. Nov. 8, 2016) (citing Elbert v. State, 20 So. 3d 961, 963 (Fla. 2d DCA 2009), and State v. Rodriguez, 990 So. 2d 600, 606-07 (Fla. 3d DCA 2008)).  Rodriguez was issued prior to Petitioner's evaluation and rejection of the plea in this case.  Thus, under Florida law existing at the time of the plea—holding that counsel is not required to apprise the defendant of the amount of time he would expect to serve based on a projection of gain time—Petitioner's counsel cannot be

---

[12] This is not a case in which counsel failed to convey a plea offer before it expired, as occurred in Missouri v. Frye, 132 S. Ct. 1399 (2012).

considered deficient for failing quantify the amount of time in prison

Petitioner could expect to serve after application of gain time.  *See*

Rodriguez, 990 So. 2d at 607.

Petitioner argues in his memorandum of law that the trial court's

ruling that an absence of advice as to the effect of gain time does not

constitute deficient performance is contrary to or an unreasonable

application of clearly established federal law.  ECF No. 6 at 12.  He relies

on Padilla v. Kentucky, 559 U.S. 356, 364-65 (2010), for the proposition

that there is no distinction between collateral and direct consequences of a

plea, and that in his case, potential gain time was a consequence of his

plea of which he was required to be fully advised.  The Supreme Court,

however, explained in Padillla:

> We, however, have never applied a distinction between direct
> and collateral consequences to define the scope of
> constitutionally "reasonable professional assistance" required
> under *Strickland,* 466 U.S., at 689, 104 S.Ct. 2052.  Whether
> that distinction is appropriate is a question we need not
> consider in this case because of the unique nature of
> deportation.

*Id.* at 365.  Moreover, the Court in Padilla emphasized that the "penalty" of

mandatory deportation after the defendant's guilty plea, which was the

issue in Padilla, "is an integral part—indeed, sometimes the most important

part—of the penalty that may be imposed on noncitizen defendants who

plead guilty to specified crimes." *Id.* at 364.  Deportation had long been

recognized as a "particularly severe 'penalty.' "  *Id.* at 365 (citing Fong Yue

Ting v. United States, 149 U.S. 698, 740 (1893)).  Gain time to be applied

under Florida law is not a penalty, as was deportation in Padilla.

The Court in Padillla also cited the "unique nature of deportation"

which caused it to be "uniquely difficult to classify either as a direct or a

collateral consequence," thus concluding that "advice regarding deportation

is not categorically removed from the ambit of the Sixth Amendment right to

counsel." *Id.* at 366.  Therefore, no rule was clearly established in Padilla

regarding which consequences or circumstances will fall, categorically,

inside or outside the "ambit of the Sixth Amendment right to counsel."  *See*

*id.*

The Court in Padilla did not hold that potential gain time, or any other

alleged consequence of a plea, may never be determined to be outside the

ambit of trial counsel's Sixth Amendment obligations.  Even if Padilla had

established the rule asserted by Petitioner, that case was decided after the

plea offer in this case.  Counsel is not required to anticipate changes in the

law resulting from subsequent court decisions.  Rambaran v. Sec'y, Dep't

of Corr., 821 F.3d 1325, 1326 (11th Cir. 2016), cert. denied sub nom.

Rambaran v. Jones, 137 S. Ct. 505 (2016).  Under § 2254, "clearly

established federal law, as determined by the Supreme Court of the United States" refers to holdings of the decisions of that Court "as of the time of the relevant state-court decisions."  Rambaran, 821 F.3d at 1330-31 (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Counsel's conduct is to be evaluated from counsel's perspective and under the circumstances present at the time.  Strickland, 466 U.S. at 689.[13]

Petitioner also argues that the state courts' adjudication of this claim—holding that trial counsel was not deficient for failing to advise Petitioner of the amount of prison time he would serve based on applicable gain time provisions—violates clearly established federal law that holds a prisoner's eligibility for reduced imprisonment is a significant factor entering into a defendant's decision regarding a plea offer.  For this proposition, Petitioner cites Weaver v. Graham, 450 U.S. 24 (1981).  The issue in Weaver, however, is one of ex post facto application of a later gain time law to an earlier sentence, and not ineffective assistance of trial counsel regarding advice as to a plea offer.  The Weaver case did not deal with trial counsel's obligations regarding advice as to how gain time might apply to a

---

[13] "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  Padilla, 559 U.S. at 372 (2010) (citing Roe v. Flores–Ortega, 528 U.S. 470, 480, 486 (2000)).

plea offer.  Thus, it sets forth no clearly established law that is contrary to the adjudication of the state courts in this case.

Nor is the holding of Missouri v. Frye, 132 S. Ct. 1399 (2012), also cited by Petitioner, contrary to the state courts' adjudication of this claim. Frye held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Id.* at 1408.  The Court found that "[w]hen defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.*  Petitioner does not dispute that the plea offers in his case were all communicated to him.  Thus, the facts and the holding in Frye are distinguishable from this instant case and Frye does not provide a basis on which to find that Petitioner's trial counsel rendered ineffective assistance by failing to advise him concerning gain time.

Finally, as the Respondent contends and as the trial court found, the Petitioner also failed to meet the prejudice prong of Strickland.  An evidentiary hearing was held at which the trial court heard the testimony of trial counsel, Petitioner, and his wife.  Based on the evidence, the trial court determined that trial counsel provided the most credible evidence that he

did not affirmatively misadvise Petitioner as to gain time, and further that he

did not inform Petitioner as to what gain time he could expect to receive.

The trial court also credited the testimony of trial counsel that Petitioner

was adamant he would not accept any prison time.  These factual findings

are entitled to a high degree of deference in federal habeas proceedings

and to a presumption of correctness.  To overcome that presumption, the

Petitioner must show by clear and convincing evidence that the state court

determinations are not fairly supported by the record.  *See* 28 U.S.C. §

2254(e)(1).

   "The standards created by Strickland and § 2254(d) are both highly

deferential, and when the two apply in tandem, review is doubly so."

Rambaran, 821 F.3d at 1331 (quoting Richter, 562 U.S. at 105 (quotation

marks and citations omitted); *see also* Gissendaner v. Seaboldt, 735 F.3d

1311, 1323 (11th Cir. 2013) ("This double deference is doubly difficult for a

petitioner to overcome, and it will be a rare case in which an ineffective

assistance of counsel claim that was denied on the merits in state court is

found to merit relief in a federal habeas proceeding.") (quotation marks and

alteration omitted).  "If this standard is difficult to meet, that is because it

was meant to be."  Richter, 562 U.S. at 102.  Petitioner has provided

nothing that meets this exacting standard.  The trial court's findings are

fairly supported by the evidence in the record, and the credibility

determinations were not shown by clear and convincing evidence to have

been objectively unreasonable in light of the state court evidence.

Petitioner has failed to meet his burden under both prongs of the test

for ineffective assistance of counsel under <u>Strickland</u>.  He has also failed to

show that the state courts' adjudication of this claim was contrary to, or an

unreasonable application of, <u>Padilla</u> or any other clearly established

Supreme Court precedent or federal law, or that it was an unreasonable

determination of the facts in light of the evidence presented.  For all these

reasons, this ground should be denied.

## **<u>Ground 2: Due Process</u>**

Petitioner contends in this claim that his federal due process rights

were violated when the trial court, at sentencing, was not aware of and

failed to consider sections 921.005 and 948.01, Florida Statutes.  ECF No.

1 at 7; ECF No. 6 at 24.  As grounds for raising this claim concerning

sections 921.005 and 948.01 in a successive motion, Petitioner alleged that

when he filed his initial Rule 3.850 motion, he was unaware of the statutes.

Ex. W at 1.  He contends in his memorandum of law filed in this Court that

by failing to consider sections 921.005 and 948.01, the trial court arbitrarily

deprived him of his substantial and legitimate expectations that the

applicable statute would be followed, thus violating his federal due process rights.

As will be explained, this claim is unexhausted and thus procedurally defaulted in the state courts but, notwithstanding the default, it is without merit.  The statutes at issue, although providing sentencing procedures concerning consideration of probation that were generally applicable to persons sentenced for crimes occurring before October 1, 1983, were not applicable in this case due to the mandatory sentence required to be imposed for capital sexual battery.

## Exhaustion in State Courts

Petitioner asserts that this federal claim was raised in Petitioner's "Second or Successive Rule 3.850 Post Conviction Motion Based on Ineffective Assistance of Trial Counsel" filed on July 31, 2013.  Ex. W at 1-38.  The motion primarily alleged ineffective assistance of counsel for his failure to seek application of section 921.005 and 948.01, Florida Statutes, at sentencing.  In addition to alleging ineffective assistance of counsel, the motion made reference to the sentence as being "illegal" due to failure of

the trial court to "make any findings required by § 921.005." Ex. W at 2, 6, 17.

Petitioner contended that the "presumptive sentence" in his case was probation, and that the life sentence was an "enhanced sentence" because of the failure of the trial court to consider probation, thereby requiring "reversal of the enhanced sentence of imprisonment of the Defendant." Ex. W at 7-8. In this argument, Petitioner compared the sentencing requirements of section 921.005 to those required for habitual offender sentencing. Ex. W at 8-15. Finally, Petitioner alleged that failure to follow state-mandated sentencing procedures was a "denial of federal and state due process," citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980). Ex. W at 16.[14]

The trial court dismissed the successive Rule 3.850 claims as procedurally barred, and denied that portion of the motion that alleged an illegal sentence. As to the illegal sentence aspect of the claim, the trial court stated,

> Defendant also argues that the sentence is illegal
> because the sentencing court did not comply with the statutory

---

[14] In support, Petitioner cites Williams v. Maggio, 730 F.2d 1048 (5th Cir. 1984), and Hicks v. Oklahoma, 447 U.S. 343 (1980), for the proposition that failure to apply sentencing statutes that allow discretion violates due process. ECF No. 6 at 25-26. As is explained, these cases are inapplicable because the pertinent Florida statutes at issue here do not allow discretion in sentencing for capital sexual battery.

requirements set forth in section 921.005.  Therefore, the Court
will treat the claim as a motion to correct illegal sentence under
Florida Rule of Criminal Procedure 3.800(a).  Section 921.005,
repealed as of Oct. 1, 1998, but in effect at the time of
Defendant's offenses in 1981 and 1982, provides that "[a] court
shall not impose a sentence of imprisonment unless, after
considering the nature and circumstances of the crime and the
prior criminal record, if any, of the defendant, the court finds
that imprisonment is necessary for the protection of the public"
for various reasons.  § 921.005(1)(a), Fla. Stat. (1983).

     This claim is not cognizable under Rule 3.800(a)
because, rather than attacking the sentence itself, Defendant is
challenging the Court's alleged failure to comport with statutory
procedure.  Even if this statute applied to Defendant's 2009
sentencing proceeding, Defendant's sentence would not be an
"illegal sentence" within the meaning of Rule 3.800(a).  A
sentence is illegal under Rule 3.800(a) if it imposes a kind of
punishment that no judge under the entire body of sentencing
statutes could possibly inflict under any set of factual
circumstance.  Carter v. State, 786 So. 2d 1173, 1181 (Fla.
2001).  Defendant was convicted of a capital felony, which,
when a death sentence is not imposed, is punishable by
mandatory life imprisonment – the sentence Defendant
received.  §§ 775,082(1) & 794.011(2)(a), Fla. Stat.  Because
Defendant's sentence is within the limits prescribed by law, it is
not illegal as contemplated by Rule 3.800(a).

Ex. W at 121-22 (emphasis added).  The trial court then stated that "the

illegal sentence claim raised in the motion is hereby DENIED."  Ex. W at

122.  Thus, the trial court found the claimed error in the sentencing process

not to be cognizable in a motion to correct illegal sentence and also without

merit.  Petitioner appealed, arguing that the sentencing procedure followed

in his case violated his federal due process rights.  Ex. X at 23.  The state

district court of appeal affirmed per curiam without opinion.  Ex. Z.

The Respondent contends the federal claim was not exhausted in the state courts, and is procedurally defaulted because the claim was raised in a successive Rule 3.850 motion that was dismissed as untimely and not meeting the exceptions for filing a successive Rule 3.850 motion.  ECF No. 15 at 18-24.  Respondent also contends that the brief reference in the Rule 3.850 motion to a violation of federal due process and one citation to a federal case is insufficient to transform a purely state law claim into a federal claim simply by couching it in terms of equal protection or due process.  *See, e.g.*, Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).

The trial court was correct that Petitioner's claim in the trial court is one of an alleged error in the sentencing process—and not every error that occurs at sentencing is an error subject to correction under Rule 3.800. Sentencing errors cognizable under that rule are limited to errors in the sentence itself.  The Florida Supreme Court in Jackson v. State, 983 So. 2d 562 (Fla. 2008), explained its jurisprudence regarding correction of illegal sentences under Rule 3.800(a) as follows:

> "[S]entencing errors include harmful errors in orders entered as a result of the sentencing process.  This includes errors in orders of probation, orders of community control, cost and restitution orders, as well as errors within the sentence itself." Fla. R. Civ. P. 3.800 court cmt.  The commentary thus explains that rule 3.800(b) is intended to permit defendants to bring to the trial court's attention errors in sentence-related *orders,* not any error in the sentencing process.

. . . .

We have never held that *any* error that happens to occur in the sentencing context constitutes a "sentencing error" under the rule.  Instead, errors we have recognized as "sentencing errors" are those apparent in *orders* entered as a result of the sentencing process.  For example, we have recognized the following as "sentencing errors" subject to the rule: claims that the defendant was improperly habitualized, *see Brannon,* 850 So. 2d at 454; that the sentence exceeds the statutory maximum, *see Terry v. State,* 764 So. 2d 571, 572 (Fla. 2000); that the scoresheet was inaccurate, *see State v. Anderson,* 905 So. 2d 111, 118 (Fla. 2005); that the trial court improperly imposed a departure sentence, *see Thogode v. State,* 763 So. 2d 281, 281 (Fla. 2000); that the written order deviated from the oral pronouncement, *see State v. Cote,* 913 So. 2d 544 (Fla. 2005); that the trial court improperly assessed costs, *see Maddox,* 760 So. 2d at 101-09; that the trial court improperly sentenced the defendant to simultaneous incarceration and probation, *see Spencer v. State,* 764 So. 2d 576, 577 (Fla. 2000); that the trial court failed to award credit for time served, *see Charles v. State,* 763 So. 2d 316, 317 (Fla. 2000); that the trial court failed to address in writing its decision to impose adult sanctions, *see Cargle v. State,* 770 So. 2d 1151, 1152 (Fla. 2000); and that a sentencing statute was unconstitutional, *see Salters v. State,* 758 So. 2d 667, 669 n. 4 (Fla. 2000).  While these holdings do not necessarily exhaust the list of errors that can be designated as "sentencing errors" under rule 3.800(b), they all involve errors related to the ultimate sanctions imposed, whether involving incarceration, conditions of probation, or costs.

These cases are consistent with the goal of both the Act and the rules amendments to ensure that sentencing errors are brought to the trial court's attention at the earliest opportunity.

*Id.* at 572-73 (citation omitted).

Petitioner was sentenced to life in prison, as the statute required for

persons convicted of sexual battery on a child under age twelve by a

person age 18 or over.  Nothing in the sentence or the order itself is erroneous; thus, Petitioner's claim was not cognizable in the improperly filed successive motion for post-conviction relief and putative motion to correct illegal sentence.

The limitations on the time for filing Rule 3.850 motions and the case law relative to successive Rule 3.850 motions and cognizable claims in Rule 3.800(a) motions are firmly established and regularly followed in Florida.  The Eleventh Circuit has concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under applicable law.  LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) (citing Whiddon v. Dugger, 894 F.2d 1266, 1267-68 (11th Cir. 1990)).  Petitioner's successive Rule 3.850 motion was dismissed as untimely and without grounds to excuse the untimeliness.  State law relative to motions to correct an illegal sentence under Rule 3.800 are also firmly established and regularly followed.  *See* Jackson, 983 So. 2d 572-73, discussed *supra*.

The state court's finding that the claim of illegal sentence was not cognizable in a Rule 3.800(a) motion, even if a portion of the Rule 3.850 could be so construed, and its finding that the successive Rule 3.850 motion was procedurally barred, rested on independent and adequate state

grounds that preclude federal habeas review.  *See* Jennings v.

McDonough, 490 F.3d 1230, 1247-48 (11th Cir. 2007) (holding that state

court's conclusion that petitioner's claims were procedurally barred by

Florida's rule against successive postconviction motions was a state law

ground independent of the federal question and adequate to support the

state court's judgment, thereby rendering the claims procedurally defaulted

on federal habeas review).  To circumvent the state's procedural bar in a

federal habeas proceeding, Petitioner must also demonstrate cause and

prejudice or manifest miscarriage of justice.  *See, e.g.,* Dretke v. Haley, 541

U.S. 386, 392-93 (2004); McClesky v. Zant, 499 U.S. 467, 494 (1991).

These grounds have not been shown.

Because Petitioner raised this claim in a successive and untimely

Rule 3.850 motion, and because it is not a claim cognizable in a Rule 3.800

motion to correct sentence, the Respondent's contention that the claim is

unexhausted and procedurally defaulted is well taken.

### Merits

Notwithstanding this procedural default, the claim should be denied

on the merits.  Petitioner contends that section 921.005, Florida Statutes,

was required to be followed by the trial court in sentencing in this case.

That statute was enacted after commission of the offenses for which

Petitioner was sentenced, but its terms indicate it was generally applicable

to persons being sentenced for offenses committed before October 1,

1983.[15]  Section 921.005 provided in pertinent part:

> (1)(a) A court shall not impose a sentence of
> imprisonment unless, after considering the nature and
> circumstances of the crime and any prior criminal record, if any,
> of the defendant, the court finds that imprisonment is necessary
> for the protection of the public because:
>
>> 1. A lesser sentence is not commensurate with the
>> seriousness of the defendant's crime; or
>>
>> 2. There is a probability that during probation the
>> defendant will commit another crime.

§ 921.005(1)(a)1.-2., Fla. Stat. (1983).  Section 921.005(1)(a)2(b) then

provided a list of grounds that, "while not controlling the discretion of the

court, shall be accorded weight in favor of withholding a sentence of

imprisonment."  § 921.005(1)(a)2.(b), Fla. Stat. (1983).  Those grounds

included the following: the criminal conduct did not cause serious harm; the

defendant did not know or have reason to know his criminal conduct would

cause harm; there were substantial grounds tending to excuse or justify the

conduct; the defendant has led a law-abiding life other than for the criminal

conduct; and the defendant's criminal conduct was the result of

---

[15] *See* 921.005, Fla. Stat. (1983); ch. 83-131, s. 7, Laws of Fla.  The statute was
repealed effective July 7, 2009.  *See* ch. 97-194, § 1, Laws of Fla.; ch. 2009-20, § 21,
Laws of Fla.

circumstances would not likely recur.  *See* § 921.005(1)(a)2(b)1.-9., Fla.

Stat. (1983).

Petitioner further contends that under the grant of authority in section

948.01, Florida Statutes, the trial court was authorized to consider

probation as referenced in section 921.005 for the two capital sexual

battery offenses in this case.  Section 948.01, Florida Statutes (1981),

stated in pertinent part:

> **948.01 When courts may place defendant on probation.—**
> (1) Any court of the state having original jurisdiction of criminal actions, where the defendant in a criminal case has been found guilty by the verdict of a jury or has entered a plea of guilty or a plea of nolo contendere or has been found guilty by the court trying the case without a jury, <u>except for an offense punishable by death</u>, may at a time to be determined by the court, either with or without an adjudication of the guilt of the defendant, hear and determine the question of the probation of such defendant.

§ 948.01(1), Fla. Stat. (1981) (emphasis added).  Section 948.01(5),

Florida Statutes, further provided that "[w]henever punishment by

imprisonment for a misdemeanor or a felony, <u>except for a capital felony</u>, is

prescribed, the court, in its discretion, may, at the time of sentencing, direct

the defendant to be placed on probation upon completion of any specified

period of such sentence."  § 948.01(5), Fla. Stat. (1981) (emphasis added).

Petitioner contends that section 948.01 authorized the trial court to consider section 921.005 and to impose probation for the sexual batteries for which he was convicted. He argues that although sexual battery on a child less than age 12 by a person age 18 or over was then, and is now, characterized as a "capital felony," death is no longer an authorized penalty for the offense and probation is, therefore, not prohibited.[16]

Section 794.011(2), Florida Statutes (1981), for which Petitioner was convicted, provides that a person who commits sexual battery on a child under age 12 when that person is over age 18 "commits a capital felony punishable as provided in section 775.082 . . . ." Section 775.082(1), Florida Statutes (1981), mandates that a person convicted of a capital felony shall be punished by life imprisonment and be required to serve no less than 25 years before becoming eligible for parole, unless otherwise sentenced to death. § 775.082(1), Fla. Stat. (1981).

Even after the death penalty was held unconstitutional for sexual battery on a child in Buford v. State, 403 So. 2d 943 (Fla. 1981), the Florida

---

[16] Petitioner also cites Easterling v. State, 989 So. 2d 1285 (Fla. 1st DCA 2008), and Tribue v. State, 682 So. 2d 196 (Fla. 3d DCA 1996), as examples of cases in which the defendants were given probation after being convicted of sexual battery on a child under age 12. However, in neither of those cases is it disclosed whether the defendants were convicted of the capital felony, where the defendant was age 18 or over, or the life felony, which occurs when the defendant was not age 18 or over, when the crime was committed.

Legislature continued to categorize sexual battery on a child under age 12 by a person age 18 or over as a "capital felony" punishable under section 775.082(1), Florida Statutes.[17]  The mandatory prison sentence for a capital felony at the time of Petitioner's offenses was life in prison with a minimum term of 25 years.  *See* § 775.082(1), Florida Statutes (1981). That prescribed sentence for a capital felony is now mandatory life in prison without possibility of parole.  *See* § 775.082(1)(a), Fla. Stat. (2016).  Thus, both before the death penalty was eliminated for sexual battery of a child under age 12 and after it was eliminated, the Legislature has categorized such sexual battery as a capital felony, giving full notice that a life sentence is mandated for capital felonies.

The Florida Supreme Court made clear in <u>Rusaw v. State</u>, 451 So. 2d 469 (Fla. 1984), that life imprisonment is mandatory for sexual battery on a child under age 12 by a person age 18 or older even though death is no longer a possible sentence.  *Id.* at 470.  The Court explained the reason for this:

> It is well settled that the legislature has the power to define crimes and to set punishments.  The legislature, by setting sexual battery of a child apart from other sexual batteries, has obviously found that crime to be of special concern. Just because death is no longer a possible punishment for the crime

---

[17] For a portion of the time period during which the capital sexual batteries were alleged in this case, Petitioner's crime was still punishable by death.

described in subsection 794.011(2) does not mean that the alternative penalty suffers from any defect.

*Id.*[18]  The Florida Supreme Court further explained in <u>State v. Hogan</u>, 451 So. 2d 844 (Fla. 1984), that "[t]he degree of the crime is what the legislature says it is, and, just because a portion of the crime designated 'capital' cannot be carried out, the degree is not lessened . . . ." *Id.* at 845. The Florida Supreme Court later recognized the right of the Legislature to categorize a crime as "capital" for purposes other than imposition of death in <u>Batie v. State</u>, 534 So. 2d 694 (Fla. 1988).  In <u>Batie</u>, the Court explained, "Notwithstanding our determination that the sexual battery proscribed by subsection 794.011(2) is no longer a capital crime, in <u>Rusaw</u> and <u>Hogan</u> we recognized the legislature's definition of it as 'capital' in determining legislative intent for other consequences of his crime." *Id.* at 694.

The Florida Supreme Court explained in 2005 that "[w]hen a person at least eighteen years old commits sexual battery on a person under

---

[18] *See also* <u>Mathis v. State</u>, 204 So. 3d 104, 105 (Fla. 1st DCA 2016) (stating that a conviction for capital sexual battery carries a mandatory life sentence); <u>Robinson v. State</u>, 955 So. 2d 1230, 1231 (Fla. 5th DCA 2007) (stating that at the time of the offense in 1994 a person age 18 or older who committed "capital sexual battery" on a child under age 12 "was required to be sentenced to life imprisonment, but was eligible for parole after serving twenty-five years"); <u>Peters v. State</u>, 861 So. 2d 1236, 1237 n.1 (Fla. 2d DCA 2003); <u>Gibson v. State</u>, 721 So. 2d 363, 368 (Fla. 2d DCA 1998) (finding the "mandatory life sentence" for capital sexual battery not cruel and unusual); <u>Cordero-Pena v. State</u>, 421 So. 2d 661, 662 (Fla. 3d DCA 1982) (holding that for capital felony, imposition of life sentence is "mandatory" with requirement that the defendant must serve 25 years).

twelve, the statute <u>deems</u> it 'a capital felony,' " even though it is no longer

punishable by death.  <u>Adaway v. State</u>, 902 So. 2d 746, 748 (Fla. 2005)

(emphasis added).  The Florida Supreme Court, noting that the state

legislature had exercised judgment about the gravity of the crime,

explained:

> Child sexual predation is a serious concern.  Even when it
> leaves no physical scars, it can create emotional damage that
> lasts a lifetime.  There is evidence that victims of abuse can
> become abusers and that this crime can transmit its injuries
> across generations.  Because victims hesitate to report this
> crime and proof of the offense is often difficult to obtain, there is
> a risk that perpetrators will believe they can escape detection
> and punishment.  As a result, there is a need for a harsh
> penalty to act as a sufficient deterrent.

*Id.* at 750-51 (quoting <u>Gibson v. State</u>, 721 So. 2d 363, 368-69 (Fla. 2d

DCA 1998) (citing Charles A. Phipps, <u>Children, Adults, Sex and the</u>

<u>Criminal Law: In Search of Reason</u>, 22 Seton Hall Legis. J. 1, 107 (1997)).

The Court in <u>Adaway</u> further concluded: "Thus, section 775.082 now

provides that a person convicted of capital sexual battery 'shall be

punished by life imprisonment,' " *id.* at 748, which the Court held to be

constitutional.  *Id.* at 753.

Therefore, since 1974, the Florida Legislature has continuously

defined and deemed sexual battery on a child under age 12 by a person

age 18 or over as "capital" for purposes of sentencing and has required

imposition of a mandatory life sentence.[19]  That being so, section 948.01, which bars consideration of probation for capital crimes, eliminates capital sexual battery from those crimes for which probation is possible, even though death is not a possible penalty.

Moreover, when all the pertinent statutory provisions are read together, the specific mandate of section 794.011(2) and section 775.082(1) require a mandatory life sentence.  The general provisions of sections 948.01 and 921.005 do not override that specific mandate and allow for probation in lieu of a mandatory life sentence.  In McKendry v. State, 641 So. 2d 45 (Fla. 1994), the Florida Supreme Court addressed the interplay between a statute prescribing a mandatory minimum sentence for possession of a short-barreled shotgun and section 948.01, which generally provides for the court to consider the question of probation in a criminal case, except for an offense punishable by death.  The Florida Supreme Court held that where a mandatory sentence is specifically ordered by the legislature, section 948.01 does not authorize the sentencing court to impose a lesser sentence or no sentence.  *Id.* at 46-47.  The Court stated that to arrive at any other conclusion would render the specific mandatory language of the statute without meaning.  *Id.* at 46.  "A

---

[19]  *See* ch. 74-121, § 2, Laws of Fla.

specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms." *Id. See als*o State v. Cregan, 908 So. 2d 387, 391 (Fla. 2005); Stoletz v. State, 875 So. 2d 572, 575 (Fla. 2004).

The Florida Legislature has specified that sexual battery on a child under the facts and circumstances of this case is to be considered a "capital" offense for the purpose of sentencing, and requires a mandatory life sentence with the requirement that the defendant serve at least 25 years for these 1981 and 1982 crimes.  This requirement is specific and mandatory.  To interpret sections 794.011, 775.082(2), 921.005, and 948.01 to allow for probation to be imposed in lieu of a mandatory life sentence would be a statutory construction reaching an absurd result, which should be avoided.  *See, e.g.*, McKibben v. Mallory, 293 So. 2d 48, 51 (Fla. 1974).  Therefore, even though section 948.01 does not expressly exempt criminal statutes that call for mandatory sentences from its ambit, the mandatory provisions of section 794.011(2) and 775.082(1) govern and preclude consideration of probation for Petitioner's crimes.

For all these reasons, the trial court did not err in failing to consider the provisions of section 921.005 and 948.01, Florida Statutes, and in failing to consider placing Petitioner on probation in lieu of any

incarceration.  The sentence for the sexual batteries committed in this case was mandatory and, because it is clearly prescribed for the offenses for which Petitioner was convicted, was not illegal.[20]  Petitioner has failed to show that the state courts' adjudication of his claim was contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor has he demonstrated that the state courts' adjudication was an unreasonable application of the facts in light of the state court record.  For all these reasons, § 2254 habeas relief on Ground 2 should be denied.

### Ground 3: Ineffective Assistance of Counsel regarding Sentencing

Petitioner contends in this claim that his trial counsel rendered ineffective assistance by failing during sentencing to raise the application of sections 921.005 and 948.01, Florida Statutes, and by failing to object when the sentencing judge did not consider these statutory provisions. ECF No. 1 at 8; ECF No. 6 at 31.  He also contends in this claim that appellate counsel was ineffective in failing to argue on direct appeal that the trial court erred by not applying these statutes during sentencing, and

---

[20] Even if error in the sentencing procedure could be shown, such an error is not *per se* reversible.  Significant procedural errors can be harmless even when they implicate federal constitutional rights.  *See, e.g.*, Hurst v. Florida, 136 S. Ct. 616, 624 (2016) (finding sentencing procedure violated the Sixth Amendment but leaving to the state to engage in harmless error analysis).  *See also* Washington v. Recuenco, 548 U.S. 212, 218 (2006).

by failing to argue on appeal that trial counsel was ineffective on the face of the record for his failure to alert the trial court to these statutes or to object when the trial court did not consider them during sentencing.  ECF No. 1 at 8; ECF No. 6 at 31.

Petitioner did not raise these claims concerning sentencing statutes in his initial Rule 3.850 motion filed September 12, 2011.[21]  Petitioner first raised the claim in his successive Rule 3.850 motion filed July 31, 2013. Ex. W at 1-38.  On that same date, in a separate petition filed in the state First District Court of Appeal, Petitioner raised the claim of ineffective assistance of appellate counsel.  Ex. EE.  That petition was denied on the merits on August 21, 2013.  Ex. FF.

As for the successive Rule 3.850 motion, the trial court dismissed the post-conviction claims as successive and untimely, citing Florida Rule of Criminal Procedure 3.850(h)(2).  Ex. W at 122.  The trial court concluded that Petitioner's asserted reason for not filing the claim in the initial Rule 3.850 motion—that he was unaware of the statutes at the time—"does not qualify as good cause for failing to have asserted the claim in that motion."

---

[21] In the initial Rule 3.850 motion, Petitioner alleged only that trial counsel was ineffective by failing to advise Petitioner regarding the amount of gain time that could be accrued if he accepted the State's plea offer of five years.  Ex. O at 2.  The issue argued on appeal from denial of post-conviction relief was the same.  Ex. Q.

Ex. W at 122.  The trial court was correct.  A second or successive motion is an "extraordinary pleading" and may be dismissed if the court finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the defendant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure.  Netting v. State, 129 So. 3d 429, 432 (Fla. 1st DCA 2013) (quoting Fla. R. Cr. P. 3.850(h)(2)).  Ignorance of the law is not good cause for allowing a new claim in a successive Rule 3.850 motion.  *See* Munoz v. State, 811 So. 2d 813 (Fla. 3d DCA 2002).  That court explained, "[A]ll defendants suffer these detriments and are still held to the statutory rules and legal principles governing post-conviction relief."  *Id.* at 814.  Ignorance of the law was not found to be an "extraordinary" reason or circumstance to justify the relief. *Id.*

"The postconviction movant, who is the party seeking the extraordinary relief of setting aside a presumptively valid and final conviction, bears the burden of discovering and raising claims within the two-year time limit.  Ignorance of the law is no excuse. Although no one can know all the law, all persons are charged with constructive knowledge of the law."  Gusow v. State, 6 So. 3d 699, 705 (Fla. 4th DCA 2009).  This

is especially true where, as here, the post-conviction movant is himself a lawyer who was familiar with criminal law.

The successive motion for post-conviction relief was dismissed as improperly filed and, thus, Petitioner has not exhausted his claim of ineffective assistance of trial counsel in the state courts. The limitations on the time for filing Rule 3.850 motions and the case law relative to successive Rule 3.850 motions are firmly established and regularly followed in Florida. As noted earlier, the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under applicable law. LeCroy, 421 F.3d at 1260 n.25. *See also* Whiddon, 894 F.2d at 1267-68. The ineffective assistance of trial counsel claim in Petitioner's successive Rule 3.850 motion was properly dismissed as improperly raised in a successive motion without grounds to excuse the untimeliness. Thus, the claim of ineffective assistance of trial counsel was unexhausted and procedurally barred.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan, 526 U.S. at 842. "[T]he petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston, 785 F.3d at 457 (quoting McNair, 416 F.3d at 1302). Petitioner must "fairly present" his

claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365-66.

Where a claim is unexhausted and, thus, procedurally defaulted, in order to obtain review, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. <u>Tower</u>, 7 F.3d at 210.  In order to demonstrate cause for the default sufficient to allow the federal court to hear an unexhausted claim, Petitioner must show that "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  <u>McCleskey</u>, 499 U.S. at 497 (quoting <u>Murray</u>, 477 U.S. at 488).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice.  <u>Henderson</u>, 353 F.3d at 892 (citing <u>Murray</u>, 477 U.S. at 495-96).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Schlup</u>, 513 U.S. at 327.  These showings of cause for, and prejudice from, the default as to the ineffective assistance of trial counsel claim have not been made, nor has Petitioner demonstrated that a constitutional violation resulted in manifest injustice.

As to Petitioner's claim of ineffective assistance of appellate counsel, that claim was raised both in his successive Rule 3.850 motion and in a separate petition under Florida Rule of Appellate Procedure 9.141 alleging ineffective assistance of appellate counsel in the state First District Court of Appeal.  Ex. EE.  That petition was denied on the merits and is thus exhausted and subject to habeas review.

Regardless of the procedural posture of the two claims, they are both without merit.  As fully discussed in Ground 2 above, the trial court correctly sentenced Petitioner to mandatory life in prison for his two convictions of capital sexual battery without considering placing Petitioner on probation. Thus, trial counsel was not deficient in failing to argue for probation under sections 921.005 and 948.01, Florida Statutes, and appellate counsel was not ineffective in failing to allege in the direct appeal that the face of the record shows trial counsel was ineffective in failing to argue the applicability of these provisions.

The state court adjudications were not contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor has Petitioner demonstrated that the state courts' adjudications of these claims were an unreasonable application of the facts in light of the state court record.

For all these reasons, Petitioner is not entitled to § 2254 habeas relief in Ground 3.

## Conclusion

Based on the foregoing, Petitioner Samuel R. Neel, III, is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether

a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 24, 2017.


**S/ Charles A. Stampelos__**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed.**

R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control</u>.  If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.